# IN THE UNITED STATESDISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | |
|---|---|
| KENNETH JOHNSON and JACQUELYN JOHNSON, as Co-Administrators for and on Behalf of The Estate of, KENDRICK LAMAR JOHNSON, A Minor, <br><br> Plaintiff, <br> vs. <br><br> BRIAN BELL, BRANDON BELL, RICHARD "RICK" BELL, LOWNDES COUNTY SCHOOL DISTRICT CHRIS PRINE, WESLEY "WES"TAYLOR, STRYDE JONES, STEPHEN WESLEY OWENS, LOWNDES COUNTY, DR. MARYANNE GAFFNEY-KRAFT, and RODNEY BRYAN <br><br> Defendants. | CIVIL ACTION <br><br> No. _____ <br><br><br><br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

### PRELIMINARY STATEMENT

KENNETH JOHNSON and JACQUELYN JOHNSON are the parents of Kendrick Lamar Johnson, who died and whose body was discovered on or about January 11, 2013 after attending Lowndes High School on the previous day. KENNETH JOHNSON and JACQUELYN JOHNSON bring this action as administrators of the Estate of Kendrick Lamar Johnson against the Defendants named herein for causing the harm, death and federal constitutional violations suffered by Kendrick Lamar Johnson. Each of the above-named defendants is liable to the Plaintiff ESTATE OF KENDRICK LAMAR JOHNSON.

In addition, each of the aforesaid defendants are liable to the Plaintiff Estate of Kendrick

Lamar Johnson for deliberately and unlawfully conspiring to hide and cover up: (a) the perpetration of an assault and other circumstances upon Kendrick Lamar Johnson on or about January 10, 2013; (b) their involvement as assailants or persons who assisted in causing said assault and the death of Kendrick Lamar Johnson; ( c) the identities of persons who directly or indirectly contributed to or assisted in causing the assault and ultimately the death of Kendrick Lamar Johnson, and (d) the involvement of each other as participants in a conspiracy to unlawfully interfere with an investigation by law enforcement agencies that purportedly was designed to discover the true circumstances surrounding the death of Kendrick Lamar Johnson.

In addition, each of the defendants identified in the above styled action intentionally and maliciously conspired to engage in a deliberate and corrupt effort to unlawfully interfere with the rights of the Plaintiff ESTATE OF KENDRICK LAMAR JOHNSON to have access to the courts of the State of Georgia and the United States of America for purposes of frustrating and denying the aforesaid Estate's right to seek legal redress. Accordingly, each of the defendants named herein are liable to said plaintiffs for the damages they have suffered due to a civil conspiracy carried out by them and which sought to interfere with their due process and equal protection rights under the Constitution for the United States of America.

In addition, Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON as Administrators of the Plaintiff ESTATE OF KENDRICK LAMAR JOHNSON seek equitable relief in the form of declaratory judgment and injunctive relief against all state actors, including but not limited to Defendants DR. MARYANNE GAFFNEY-KRAFT, and RODNEY BRYAN, as well as all other defendants named herein and who are being sued in their official capacity as Agents, servants, and employees of the Georgia Bureau of Investigation.

## JURISDICTION AND VENUE

1. This court has federal question jurisdiction as it relates to each of the named defendants pursuant to 28 USC §§1331, 1343, 42 USC §§1983, 1985(3), and 1988, in the Fourteenth Amendment to the United States Constitution. This court also has federal jurisdiction as it relates to Defendants Brian Bell, Brandon Bell, and Richard "Rick" Bell based upon diversity jurisdiction pursuant to 28 USC §1332. Lastly, this Court has supplemental jurisdiction pursuant to 28 USC §1367(a).

2. Venue is properly placed within this district court and division inasmuch as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## PARTIES

3. Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON appear herein as Administrators of the ESTATE OF KENDRICK LAMAR JOHNSON, who was a minor at the time of his death and who left no surviving spouse or children of his own.

4. At all times material to this Complaint, Defendant RICK BELL was an Agent of the Federal Bureau of Investigation ("F.B.I.") and who is being sued in his individual capacity. Defendant RICK BELL may be served with service of process at his residence in the State of Florida

5. At all times material to this Complaint, Defendant BRANDEN BELL was the oldest son of Defendant RICK BELL and who is being sued in his individual capacity and who was at the time of the incidents identified herein, a minor child of Defendant RICK BELL. Defendant BRANDEN BELL may be served with service of process at his residence located in the State of

Florida.

6. At all times material to this Complaint, Defendant BRIAN BELL was the youngest son of Defendant RICK BELL and who is being sued in his individual capacity and who was at the time of the incidents identified herein, a minor child of Defendant RICK BELL. Defendant BRIAN BELL may be served with service of process at his residence located in the State of Florida.

7. At all times material to this Complaint, Defendant WILLIAM WESLEY "WES" TAYLOR was the Superintendent of the LOWNDES COUNTY SCHOOL DISTRICT and who is being sued in his individual capacity, as well as, his official capacity. Service of process may also be accomplished by serving Defendant WILLIAM WESLEY "WES" TAYLOR at 1592 Norman Drive, Valdosta, Georgia.

8. At all times material to this Complaint, Defendant CHRIS PRINE was the Sheriff of the Lowndes County Sheriff's Office and who is being sued in his individual, as well as, in his-then official capacity. Defendant CHRIS PRINE may be served with service of process at his residence in Lowndes County, Georgia.

9. At all times material to this Complaint, Defendant STRYDE JONES was a Lieutenant of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant STRYDE JONES may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

10. Defendant LOWNDES COUNTY, GEORGIA is a political subdivision created by and operating under the laws of the State of Georgia.  As such, this defendant funds and maintains the Lowndes County Sheriff's Office, as well as employs Defendant STRYDE JONES.

11. At all times material to this Complaint, Defendant STEVE OWENS was the owner of

Steve Owens Transport Service and who is being sued in his individual capacity. Defendant STEVE OWENS may be served with service of process at 4659 Wheeler Road, Quitman, Georgia.

12. At all times material to this Complaint, Defendant DR. MARYANNE GAFFNEY-KRAFT was the Medical Examiner of the Georgia Bureau of Investigation and who is being sued in her individual, as well as, in his official capacity. Defendant DR. MARYANNE GAFFNEY-KRAFT_may be served with service of process at the headquarters of the G.B.I., located at 3121 Panthersville Road, Decatur, Georgia.

13. At all times material to this Complaint, Defendant RODNEY BRYAN was a death investigator with the Georgia Bureau of Investigation and who is being sued in his individual, as well as, in his official capacity. Defendant RODNEY BRYAN may be served with service of process at the headquarters of the G.B.I., located at 3121 Panthersville Road, Decatur, Georgia.

14. At all times material to this Complaint, Lowndes High School was an agency and facility organized and existing under the authority of the Defendant LOWNDES COUNTY SCHOOL DISTRICT.

15. At all times material to this Complaint, Defendant LOWNDES COUNTY SCHOOL DISTRICT through its agents, employees, teachers, administrators, staff or representatives were acting under color of State statutes, ordinances, regulations, customs and usages of the State of Georgia and in their actions and appearances pursuant to their authority.

## FACTS COMMON TO ALL CLAIMS

16. On January 10, 2013, KENDRICK LAMAR JOHNSON (hereinafter sometimes

**RELIEF**

referred to as "plaintiffs' decedent" or "Kendrick") was a student attending Lowndes High School.

17. However, on the evening of January 10, 2013, Kendrick failed to return home where he resided with his parents and other family members.

18. When Kendrick failed to return home, his mother, Plaintiff JACQUELYN JOHNSON, contacted a local law enforcement agency for purposes of obtaining's assistance in establishing her son's whereabouts.

19. When an officer arrived at Plaintiff JACQUELYN JOHNSON's Home, he attempted to quell her concerns by stating that Kendrick was probably with some young female and had lost track of time.

20. To the extent that Kendrick did not return home as expected and that it was most unlike him to be away from home without advising his family, plaintiff Jacquelyn Johnson went to Lowndes High School the following morning for purposes of locating her son.

21. While waiting to speak to someone in a school administrator's office, plaintiff Jacquelyn Johnson noticed that an employee in that office was already photocopying notices which identified Kendrick as a missing person.

22. Shortly thereafter, Plaintiff JACQUELYN JOHNSON was notified that a dead body had been located in the "old gym" at the Lowndes High School, and that it had been identified as that of her son Kendrick.

23. At the time at on which Kendrick's body had been discovered, officers with the Lowndes County Sheriff's Department refused to allow plaintiff Jacquelyn Johnson or any other member of her family to identify the body.

24. Contrary to investigative procedures, members of the local law enforcement

community failed to "lock down" the school's campus or take measures that were designed to preserve the integrity of the area where Kendrick's body was located.

25. Contrary to Georgia law, OCGA §45-16-24(a), requiring that "[i]t shall be the duty of any law enforcement officer having knowledge of such death to notify immediately to coroner or County medical examiner of the County in which the acts or events resulting in the death occurred or the body is found", members of the Lowndes County Sheriff's Office, Including but not limited to Defendants Sheriff CHRIS PRINE and Lieut. STRYDE JONES, deliberately failed to notify the Lowndes County Coroner for approximately six (6) hours.

26. Notwithstanding an examination of Kendrick's body by two (2) emergency medical technicians ("EMTs"), who opined that their location of a bruise to the right side of Kendrick's jaw indicated that the area in the Lowndes High School "old gym" was a crime scene, Defendant CHRIS PRINE contradicted their medical findings and thereafter announced to the public and the press before 6:00 PM on the same day that no evidence of "foul play" had been located, and that Kendrick died as a result of an accident.

27. In addition to the aforesaid observations of said EMTs, law enforcement personnel, including but not limited to Defendants Sheriff CHRIS PRINE and Lieut. STRYDE JONES became aware of the presence of blood spatter from an unidentified source that was observed upon the surfaces of a wall that was proximal to the location of Kendrick's body. However, the blood was never tested to determine if it was the blood of Defendants BRANDON BELL and BRIAN BELL, who were at all times relevant herein considered to be known suspects or "putative defendants in an investigation conducted by the United States Department of Justice.

28. Notwithstanding the obvious questions as to where this blood came from and who was

**RELIEF**

the source, Defendants Sheriff CHRIS PRINE and Lieut. STRYDE JONES theorized that Kendrick died as a result of him attempting to retrieve a tennis shoe by entering into the center opening of the aforesaid rolled-up gym mat and thereafter becoming stuck and without the ability to free himself or signal for help.

29. On January 13, 2013, Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON went to the Valdosta-Lowndes, Regional Crime Laboratory where they were met by Defendants Sheriff CHRIS PRINE and Lieut. STRYDE JONES and James Thorton for purposes of viewing the body of plaintiffs' decedent. On that occasion, Plaintiff KENNETH JOHNSON entered the room where Kendrick's body was being stored and where he noted that the room temperature appeared to be much warmer than what he had anticipated inasmuch as he thought that said room and the vault that the decedent's body was being stored in was designed to preserve the remains through a process similar akin to refrigeration. Upon information and belief, each of the aforementioned law enforcement officers, including but not limited to Defendants Sheriff CHRIS PRINE and Lieut. STRYDE JONES and James Thorton, was aware of the effort to advance the decomposition of Kendrick Johnson's remains as a part of the aforesaid conspiracy, and yet failed to take any action to prevent the destruction or elimination of the evidence that would otherwise be preserved through appropriate handling of said remains.

30. At that time, Defendants Sheriff CHRIS PRINE explained to Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON that plaintiff's decedent had entered the center hole of the aforementioned gym mat "feet first" and that while at the bottom of the hole, plaintiffs' decedent bent over to retrieve his tennis shoe and became stuck in such a way that he could not free or remove himself from the hole.

31. Upon hearing the foregoing explanation, Plaintiff KENNETH JOHNSON stated to Defendants Sheriff CHRIS PRINE that his explanation was not possible, whereupon Defendant STRYDE JONES stated to Plaintiff KENNETH JOHNSON that he needs to understand that "when you die, your muscles relax and then you fall forward." The aforesaid explanation offered by Defendants Sheriff CHRIS PRINE and STRYDE JONES was communicated to Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON in furtherance of a conspiracy to cover-up the commission of the crime.

32. Due to the aforesaid findings of "no foul play" and a theory offered by Sheriff Chris Prine, Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON were desirous of having a further investigation into the cause and circumstances of their son's death.

33. Concurrent therewith, Plaintiffs contacted Harrington's Funeral Home and Antonio Harrington for purposes of properly handling the remains of plaintiff's decedent, as well as, making the arrangements for the funeral services and internment of his remains.

34. On or about January 14, 2013, the remains of Plaintiffs' minor child were transported by Defendant STEPHEN WESLEY OWENS of Owens' Transport Service from the Valdosta-Lowndes Regional Crime Laboratory to a crime lab operated by the Georgia Bureau of Investigation ("G.B.I.")' near Macon, Georgia for purposes of undergoing an official autopsy. Upon completion of said autopsy, Defendant STEPHEN WESLEY OWENS allegedly transported Kendrick's remains back to Valdosta during the early afternoon hours of January 14, 2013 and delivered said remains to Harrington's Funeral Home.

35. Antonio Harrington expressed to Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON his concerns as to the aforesaid explanation for their child's death and recommended

**RELIEF**

that they should get a "second opinion" as to the cause of death notwithstanding the then-unknown-findings of official autopsy. Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON concurred with Antonio Harrington's recommendation.

36. On or about January 16, 2013, an occasion on which Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON visited the Harrington's Funeral Home, said plaintiffs inquired of Antonio Harrington whether they could collect the clothing that their son was wearing at the time that his body was discovered at the Lowndes High School.

37. Responsive to said request, Antonio Harrington advised Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON that he was unaware that their child had any clothes when his remains were returned from the aforesaid G.B.I. Crime Lab.

38. In addition to the aforesaid inquiry about their minor child's clothing, Plaintiffs never authorized Antonio Harrington nor his staff to destroy or dispose of any of Kendrick's body parts, including but not limited to his internal organs.

39. In the course of attempting to ascertain the whereabouts of Kendrick's clothing, Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON contacted the aforementioned G.B.I. Crime Lab in Macon, Georgia based upon Antonio Harrington's representations to them that the subject clothing was not returned with the remains of their son.

40. Upon making contact with employees at the aforesaid G.B.I. Crime Lab, Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON were advised that all personal effects, including but not limited to Kendrick's clothing, were placed in a body bag and returned to Valdosta, Georgia with the his remains.

41. In addition to making contact with the aforesaid G.B.I. Crime Lab for purposes of

locating the said clothing which was worn by their son, Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON inquired as to the length of time that it would take the G.B.I. Crime Lab to complete the autopsy report.

42. After several months of repeatedly calling the G.B.I. Crime Lab to establish the status of the autopsy report, on or about May 2, 2013 the autopsy report which had been authored and prepared Defendant MARYANNE GAFFNEY-KRAFT was released to the Lowndes County Sheriff's Office and ultimately, to Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON. This autopsy report concluded that the cause of Kendrick's death was positional asphyxia, and that the manner of death was concluded to be accidental.

43. Inasmuch as Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON were in receipt of conflicting evidence and reports, as well as, being beleaguered by many unanswered questions, they made arrangements to have their son's remains exhumed for purposes of conducting a second and independent autopsy.

44. Yet, in spite of the absence of any ordinance, regulation, or state law requiring that the next of kin obtain a court order before they would be allowed to remove the remains of their loved one, in this instance, the city manager for the City of Valdosta required that the Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON petition the Superior Court of Lowndes County for a court order before allowing them to exhume the remains of their own son.

45. On or about June 14, 2013, Kendrick's remains wer disinterred, and thereafter, the remains of plaintiff's decedent were transported to Orlando, Florida on June 15, 2013 for purposes of undergoing a second and independent autopsy by Dr. William R. Anderson, a licensed forensic pathologist in the State of Florida.

**RELIEF**

46. On or about June 15, 2013, as Dr. Anderson began to examine the inside of Kendrick's abdomen when he determined that all of Kendrick's internal organs were missing and that his body was stuffed with waded newspaper.

47. In addition, Dr. Anderson observed that Kendrick's brain was also missing. Upon information and belief, the autopsy by Dr. Anderson was made more complicated and thus deprived him of the ability to conduct the type of autopsy that was otherwise contemplated and needed in order to make a more definitive finding.

48. Notwithstanding the foregoing circumstances, Dr. Anderson established that Kendrick had suffered an injury to the right side of his upper neck, and that the cause of death was blunt force trauma, an injury that was consistent with one that would have been "inflicted" and "non-accidental" in nature.

49. Inasmuch as the right side of plaintiffs' decedent's upper neck had not been sectioned by Defendant MARYANNE GAFFNEY-KRAFT, the forensic pathologist who performed the official autopsy for the G.B.I., Dr. Anderson reached out to said defendant or her office to establish whether or not she wanted to examine his findings, including the tissue samples which were taken from plaintiffs decedent during his autopsy of June 15, 2013.

50. Upon information and belief, Defendant MARYANNE GAFFNEY-KRAFT nor anyone from the G.B.I. ever accepted Dr. Anderson's aforesaid invitation to examine his tissue specimens and thus establish whether or not said defendant had missed a critical factor in reaching her opinion as to whether the cause of death was altogether accidental or possessed features indicating an assault or blunt force trauma. In fact, Dr. Anderson's invitation was roundly rejected.

51. Following the discovery of their son's missing organs, Plaintiffs sought to inquire of Antonio Harrington whether he was aware of what had happened to the organs of plaintiff's decedent. Of the several responses which Antonio Harrington offered, he advised that the Coroner for Lowndes County, Georgia, had informed him that Defendant RODNEY BRYAN, a death investigator with the G.B.I, told him via telephone that the viscera or internal organs were disposed of during the G.B.I.'s official autopsy "due to decomposition."

52. Prior to the completion of the aforesaid official autopsy by the defendants MARYANNE GAFFNEY-KRAFT and the G.B.I., an Open Records Act ("ORA") request, pursuant to OCGA §50-18-70 *et seq*., was initially placed upon the Lowndes County Sheriff's Department on behalf of Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON on January 28, 2013.

53. Notwithstanding that Defendant Sheriff CHRIS PRINE had announced that the Sheriff's Department had completed its investigation on or about May 4, 2013 and as a consequence thereof, was no longer exempt from complying with the Plaintiffs' Open Records Act Request, it was not until October 30, 2013 and November 6, 2013 that Defendant Sheriff CHRIS PRINE ultimately released the Sheriff's Department's full investigative file, including copies of surveillance images recorded at Lowndes High School on January 10, 2013 and January 11, 2013.

54. Defendant Sheriff CHRIS PRINE's compliance with Plaintiffs' aforesaid Open Records Act Request, however, was not voluntary, but the result of a court order which was issued on October 30, 2013 and grossly deficient in several respects.

55. Of the materials that were reproduced by said Sheriff's Department for Plaintiffs

**RELIEF**

JACQUELYN JOHNSON and KENNETH JOHNSON's examination, said Plaintiffs were nevertheless advised that certain documents or materials were being withheld for various reasons, including but not limited to the desire to protect the privacy of minors whose identity would otherwise be disclosed or suggested in the documents.

56. As a result, Defendant LOWNDES COUNTY's Sheriff's Department withheld photographs and moving images that Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON were otherwise entitled to receive.

57. In addition to the refusal to disclose entire documents or allow for their review, said Sheriff's Department redacted many if not most of the documents it produced by eliminating any information that disclosed or suggested the identity of individuals it maintained or considered to be minors, as though the alleged minors were entitled to privacy or confidentiality under the Open Records Act, which they do not.

58. The aforesaid refusal to comply with Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON's O.R.A. request constituted a deliberate and malicious effort to withhold information from plaintiffs who were legitimately entitled to receive same as a means of determining the true cause of their son's death, as well as, the identities and involvement of the individuals who were connected with or responsible for his death.

59. The aforesaid refusal by Defendant Sheriff CHRIS PRINE and other defendant law enforcement officers to conduct a legitimate investigation was not only an effort to deliberately cover-up the less-than-adequate effort by said law enforcement agencies to investigate Kendrick's death, but to also to cover-up the identities of those individuals responsible for causing his death.

60. In addition, the aforesaid refusal by Defendant Sheriff CHRIS PRINE to comply with

Plaintiffs' ORA request was an attempt to deliberately and maliciously mishandled the subject investigation in such a way that anyone who might ever be charged with Kendrick's death would never be convicted due to a patently flawed investigation.

61. In the course of examining the video surveillance recordings which showed Kendrick entering the Lowndes High School's old gym on the date that he went missing, the surveillance cameras for some unknown reason stops recording just seconds before Kendrick reaches the area where his body was ultimately found on the day following.

## CAUSES OF ACTION

### Count I- Plaintiff Estate vs. Defendants Brian Bell and Branden Bell
### (State Law Claim for Assault and Battery)

62. On or about January 10, 2013, Kendrick Johnson was violently assaulted by persons, including but not limited to Defendants BRANDON BELL and BRIAN BELL, in the course thereof, suffered a fatal injury which led to his death.

63. Upon information and belief, following the aforesaid assault upon Kendrick Johnson, Defendants BRANDON BELL and BRIAN BELL, and certain individuals who are currently unknown to plaintiffs, not only failed to render aid to plaintiffs' decedent or notify school authorities of his condition, but instead, sought to cover-up their wrongful and illegal conduct.

64. Under the laws of the State of Georgia this conduct constitutes a tort for which Defendants BRANDON BELL, BRIAN BELL are liable.

### Count II- Plaintiff Estate vs. Defendant William
### Wesley "Wes" Taylor and Lowndes County School District

## RELIEF

### (Federal Law Claim Under §1983)

65. Prior to the events of January 2013, defendant Brian Bell initiated a fight with Kendrick Johnson on a school bus.

66. When plaintiff Jacquelyn Johnson confronted school officials with the defendant LOWNDES COUNTY SCHOOL DISTRICT about the fight, she requested to examine the video recording that showed how the fight began as well as who was the aggressor.

67. On that occasion, Plaintiff JACQUELYN JOHNSON was denied the opportunity of viewing the video recording, even though there was no valid reason for denying her request.

68. Upon information and belief, the aforementioned video recording would have showed that Defendant BRIAN BELL initiated the fight, and as a consequence, Kendrick Johnson should not have received any disciplinary action for defending himself.

69. On or about January 10, 2013, upon information and belief, Defendant BRIAN BELL once again initiated a violent confrontation between himself and Kendrick Johnson.

70. To the extent that personnel at the Defendant LOWNDES COUNTY SCHOOL DISTRICT, including Defendant WESLEY TAYLOR, had prior knowledge of Defendants BRIAN BELL's and BRANDON BELL's attitude towards Kendrick Johnson, as well as, said schools district's efforts to demonize Kendrick Johnson and therefore protect or demonstrate favoritism towards Defendants BRIAN BELL and BRANDON BELL, said defendant school district effectively condoned and encouraged the aforesaid attack upon Kendrick Johnson on or about January 10, 2013.

71. Failure of personnel with the defendant school District, including but not limited to Defendant WESLEY TAYLOR, to Defendants BRIAN BELL and BRANDON BELL's

mean-spirited "bullying" and warrantless aggression towards Kendrick Johnson and thus, to protect him from receiving harm, including loss of life, constitutes a violation of Kendrick Johnson's constitutional rights which is actionable under 42 USC §1983.

### Count III- Plaintiff Estate vs. All Defendants
### (Federal Law Claim Under §§1983 and 1985(3))

72. Plaintiff reasserts the allegations contained in paragraphs 1 through 71, above, as though fully recited for purposes of this count.

73. The conduct that was exhibited by each of the defendants as set forth above demonstrates that there was a conspiracy to hide or cover up vital information and evidence of a crime or crimes as committed by Defendants BRIAN BELL and BRANDON BELL.

74. In fact, in furtherance of the aforesaid conspiracy, Defendant RICHARD "RICK" BELL used his connections to the law enforcement community of the Lowndes County, Georgia and beyond to orchestrate a multifaceted operation that was designed to cover-up the identity of his sons, Defendants BRIAN BELL and BRANDON BELL, as the primary perpetrators of the deadly assault upon Kendrick Johnson.

75. One of the purposes of the conspiracy was to interfere with the Plaintiff ESTATE's rights to have access to the courts for redress of wrongs perpetrated upon Kendrick Johnson and to deny him his right to due process and equal protection of the laws as set forth by the Fourteenth Amendment to the Constitution of the United States of America.

76. As a result of the aforesaid conspiracy, all of which was aided by the aforementioned efforts of the defendants to thwart the progress of the investigation into the assault and death of

**RELIEF**

Kendrick Johnson, the Plaintiff ESTATE's opportunity to receive justice and any meaningful redress has been severely damaged and suffered an incalculable loss.

77. Each of the defendants, either as state actors or who knowingly were acting in concert with state actors, engaged in carrying out the goals and the objectives of the conspiracy prior to the filing of any subsequent lawsuit by the Plaintiff ESTATE or his parents KENNETH JOHNSON and JACQUELYN JOHNSON.

### .Count IV- Plaintiff Estate vs. All Defendants
### (State Law Claim for Pain and Suffering, Funeral and Other Necessary Expenses Under OCGA § 51-4-5)

78. To the extent that during the assault upon Kendrick Johnson caused him to experience pain-and-suffering prior to his death or to incur funeral and other such necessary expenses following his death, all of the defendants herein by virtue of their conspiratorial involvement are liable to the Plaintiff ESTATE.

### Count V- Plaintiff Estate vs. All Defendants
### (State Law Claim for the Loss of Kendrick Johnson's Clothing as Well as the Mutilation and Loss of His Internal Organs, Under OCGA § 51-10-6)
47.

79. To the extent that the clothing which Kendrick Johnson was wearing on the date of his demise constitutes personal property which belonged to him but which went missing upon his body's release from the G.B.I. crime lab following the initial autopsy, plaintiff's estate is entitled to be compensated for its loss.

80. Moreover, the loss of the aforementioned clothing was really the result of an intentional effort to destroy evidence that may have led to the identification of the individual(s)

who were responsible for the assault and death of Kendrick Johnson.

81. Accordingly, the aforementioned items of clothing have a value that is not determined by standards such as "fair market value", but instead should be measured by the value that the items would have aided in reaching the truth of what occurred to Kendrick Johnson, the ability to possibly identify his assailant(s), and the impact that such items would have as evidence leading to a monetary recovery in any resulting litigation.

82. To the extent that the removal and destruction of Kendrick Johnson's internal organs amounts to a similar harm and loss to the plaintiff estate, each of the defendants as participants in the aforesaid conspiracy is liable under OCGA §51-10-6.

## Count VI- Plaintiff Estate vs. All Defendants
### (Federal Law Claim Under §§1983 and 1985(3))

83. Upon information and belief, The attitudes of the defendants as relates to the issue of race demonstrates a level of animus that contributed either in whole or part to the assault upon Kendrick Johnson, as well as the goal of damaging his right to seek redress from the courts.

84. Accordingly any racially motivated misconduct, including but not limited to any intentional discrimination which may have led to the "second-class" treatment and consideration given to the investigation of Kendrick Johnson's death constitutes a violation of the equal protection clause and the Fourteenth Amendment to the Constitution of the United States of American and thereby is actionable under 42 USC §1983.

**RELIEF**

WHEREFORE, Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON as administrators of the ESTATE OF KENDRICK LAMAR JOHNSON requests this Court to order:

1. Compensatory damages in excess of ;$75,000.00 and according to the evidence;

2. Punitive damages against the individual defendants, jointly and severally;

3. Declaratory relief regarding the cause and manner of Kendrick Johnson's death

4. Attorney's fees and costs pursuant to 42 USC §1988; and

5. All other appropriate relief.

                              THE C.B. KING LAW FIRM

                BY:    /s/Chevene B. King, Jr.
                            Chevene B. King, Jr.
                            Attorney for Plaintiff Estate of
                            Kendrick Lamar Johnson

Prepared by:

Chevene B. King, Jr.
Post Office Drawer 3468
Albany, GA  31706
(912) 436-0524
State Bar No.: 420105